# EXHIBIT A

Mark Potter Esq., SBN 166317
Krista Hemming, SBN 304213
**POTTER HANDY, LLP**
100 Pine Street, Ste. 1250
San Francisco, CA 94111
Phone: (858) 375-7385; Fax: (888) 422-5191
Email: TEMUlit@potterhandy.com
Attorneys for Plaintiffs

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
3/27/2025 4:29 PM
David W. Slayton,
**Executive Officer/Clerk of Court,**
By G. Cordon, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| Breeaunna Henry, (See additional parties list with plaintiffs attached)<br><br>Plaintiffs,<br><br>vs.<br><br>WHALECO, Inc., d/b/a TEMU; PDD Holdings, Inc., f/k/a PINDUODOU Inc.; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. 25STCV09085<br><br>**[UNLIMITED] COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT OF 1986 (ECPA);**<br>**2. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT;**<br>**3. VIOLATION OF THE CALIFORNIA COMPREHENSIVE DATA ACCESS AND FRAUD ACT ("CDAFA");**<br>**4. VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT;**<br>**5. VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW;**<br>**6. VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW;**<br>**7. VIOLATION OF THE RIGHT OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION;**<br>**8. INTRUSION UPON SECLUSION**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs Breeaunna Henry, (See additional parties list with plaintiffs attached) (collectively "Plaintiffs"), bring this complaint based upon on information and belief, by and through undersigned counsel, against Whaleco Inc. d/b/a Temu ("Temu"), and PDD Holdings Inc. f/k/a Pinduoduo Inc. (collectively, "Defendants").

1

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution and Code of Civil Procedure section 410.10

2.    This Court has personal jurisdiction over Defendants. Defendants are a corporation or other business entity authorized to conduct and does conduct business in the Stat of California. Defendants advertise and sells products in California, and conducts sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through its promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

3.    Venue is proper in this county in accordance with Section 395(a) of the California Code of Civil Procedure because the alleged wrongs occurred in the county. Venue is also proper in this county because it was the county where at least one Plaintiff resides.

## NATURE OF ACTION

4.    In 2022, Defendants launched an online shopping platform, Temu, in the United States. The Temu mobile app and website (the "Temu platform" or "Temu app"), is purported to be an online shopping platform that allows users to purchase low-cost goods manufactured in China. However, the Temu app is actually dangerous malware, surreptitiously granting itself access to virtually all data on a user's cell phone.

5.    Specifically, Temu is purposefully designed to gain unrestricted access to a user's phone operating system, including, but not limited to, a user's camera, specific location, contacts, text messages, documents, biometric information and other applications. Temu is designed to make this expansive access undetected, even by sophisticated users.

6.    Once installed, Temu can recompile itself and change properties, including overriding the data privacy settings users believe they have in place. Even users without the Temu app are subject to Temu's gross overreach if any of their information is on the phone of a Temu user. Temu monetizes this unauthorized collection of data by selling it to third parties.

7.    This action arises out of Defendants' violations of the Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510-2523 and California Consumer Privacy Act of 2018 (CCPA), Cal. Civ. Code § 1798.100.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

**PARTIES**

8.      Plaintiff Breeaunna Henry, an individual and citizen of the State of California, County of Los Angeles.  Plaintiff downloaded the Temu App and used/shopped on the App and/or platform, thereby subjecting Plaintiff to personal and private data misappropriation by defendant.

9.      Additional Plaintiffs listed on ATTACHMENT A, are individuals and citizens of the United States of America. Plaintiffs downloaded the Temu App and used/shopped on the app and/or platform, thereby subjecting Plaintiffs to personal and private data misappropriation by defendant.

10.      Whaleco Inc. d/b/a Temu ("Temu") is, and at all relevant times was, a corporation incorporated in Delaware and headquarter in Boston, Massachusetts. Temu is an online marketplace operated by the Chinese e-commerce company PDD Holdings Inc.

11.      PDD Holdings Inc. f/k/a Pinduoduo Inc., is a company that was founded in China in 2015 under the name Pinduoduo. It owns and operates a portfolio of businesses and is listed on the Nasdaq exchange in the United States. Among other things, PDD Holdings Inc., operates the Pinduoduo e-commerce platform that offers products in various categories, including agricultural produce, apparel, shoes, bags, mother and childcare products, food and beverage, electronic appliances, furniture and household goods, cosmetics and other personal care, sports and fitness items and auto accessories. It also owns the company that operates the Temu online marketplace. PDD Holdings Inc. was formerly known as Pinduoduo Inc., with headquarters in Shanghai, China. PDD Holdings Inc. claims that in February 2023, it moved its "principal executive offices" from Shanghai, China to Dublin, Ireland. However, it continues to have significant operations in China, with multiple subsidiaries located within China. PDD Holdings Inc. is registered in the Cayman Islands.

12.      Defendants do not function as separate and independent corporate entities. Defendant Temu is directly controlled by Defendant PDD Holdings Inc. At all relevant times, Defendant PDD Holdings Inc. has directed the operations of Defendant Temu with respect to the Temu App, and Defendant Temu has reported to Defendant PDD Holdings Inc. Employees from Defendant PDD Holdings Inc. performed work on the Temu App, including software engineers who previously developed the Pinduoduo App for PDD Holdings Inc.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

Defendant PDD Holdings Inc. makes key strategy decisions for Defendant Temu, which was charged with executing such decisions.

13.    Defendants DOES 1 through 100, inclusive, are other possible Defendants responsible for the wrongful conduct alleged herein.   The true names and capacities of Defendants named herein as DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs are informed and believe that the DOE Defendants are California residents.  Plaintiffs will amend their Complaint to show true names and capacities when they have been determined.  Plaintiffs are informed and believe, and on the basis of such information and belief allege, that each Defendant DOE herein is in some manner responsible for the discrimination, harassment, and retaliation against Plaintiffs due to their protected reporting activities, and damages herein alleged.

14.    Plaintiffs are informed and believe and thereon allege that each Defendant is, and at all times mentioned was, the agent, employee or representative of each other Defendant. Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority, or the alleged acts and omissions of each Defendant as an agent were subsequently ratified and adopted by each other Defendant as a principal.

## FACTUAL ALLEGATIONS

15.    Founded in 2015, PDD Holdings is one of China's largest companies, generating billions in total value of goods sold. Among other business activities, PDD Holdings operates Pinduoduo, (the "Pinduoduo platform" or "Pinduoduo App") an e-commerce App created in China that offers various consumer products.

16.    Defendant PDD Holdings Inc. subsequently developed a second online retail App, and in 2022 launched the Temu App in the United States.

17.    The Temu App provides a marketplace for Chinese suppliers to offer their products. However, the Temu App also handles delivery, promotion, and after-sales services for merchants on its platform.

18.    The Temu App was based on the Pinduoduo App, and many of the same software engineers who developed Pinduoduo also worked on what became the Temu App.

4

19.     The Temu App/platform became available to consumers in the United States in late 2022.

20.     Since that time, Defendants have heavily promoted the Temu App throughout the United States, through television advertisements, large online ad campaigns, and sponsorships.

21.     As a result of their efforts, by 2023, the Temu App was the most downloaded App In the United States amassing millions of U.S. users.

22.     Analysts have found that Temu App, specifically, uses the allure of inexpensive Chinese-manufactured goods to entice users into unknowingly providing unwarranted and extensive access to their private data through deceptive methods.

### A.  Concerns Arise Regarding Security of The Temu App/Platform

23.     In early to mid-2023, the Temu App and/or platform, along with the popular social media app TikTok was identified as one of the Chinese-affiliated App that poses a significant threat to users' data and privacy.

24.      Concerns also began to emerge after Temu's precursor platform, the Pinduoduo App, was pulled from the Defendants' Play Store due to the presence of malware that exploited vulnerabilities in Android operating systems. Analysts, including experts for the Defendants, concluded that the Pinduoduo App was covertly collecting private and personal data from users without their knowledge and consent.

25.     In mid-2023, Apple suspended the Temu App from the Apple Store based on the same data privacy concerns. Apple concluded that Temu made misrepresentations regarding the types of data Temu can access and collect from users. Reports indicated that Apple had expressed concerns regarding the Temu App, stating that it did not comply with Apple's data privacy standards and that Temu was misleading users about how their data is utilized.

26.     Such concerns have also been expressed recently by government authorities who have examined the App. For example, the State of Montana recently banned the Temu App on government devices, along with other Chinese Apps that have engaged in data privacy violations, such as TikTok.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

27.      In January of 2024, the Arkansas Attorney General sued Temu for deceiving Arkansans and illegally accessing their personal information and data.

28.      Likewise, U.S. authorities have also raised concerns regarding Temu's data practices.

29.      In April 2023, the U.S.-China Economic and Security Review Commission, a government entity established by Congress to investigate, assess, and report annually on the national security implications of the economic relationship between the United States and the People's Republic of China, issued a report noting the significant data risks associated specifically with the Temu App.

30.      Subsequently, technical analysts have determined that the Temu App is deemed even more "malicious" than the suspended Pinduoduo App, noting that Temu's data collection scope is extensive, surpassing what is necessary for the functioning of an online shopping app.

31.      According to one commentator, aside from Bluetooth and Wi-Fi access, "Temu gains full access to all your contacts, calendars, and photo albums, plus all your social media accounts, chats, and texts. In other words, literally everything on your phone.… No shopping app needs this much control, especially one tied to Communist China."

B.  **Temu Violates Users Data Privacy Rights in Multiple Ways.**

1.  **The Scope of Data Collected**

32.      First, analysts have observed that the scope of the data collected by Temu is sweeping and goes well beyond the scope of the data that is needed to run an online shopping app.

33.      In addition to Bluetooth and Wi-Fi access, "Temu gains full access to all your contacts, calendars, and photo albums, plus all your social media accounts, chats, and texts. In other words, literally everything on your phone.."

34.      Additionally, it is alleged that the Temu App "bypasses" phone security systems to read a user's private messages, make changes to the phone's settings and track notifications.

35.      In September of 2023, one technical investigation of the app published by an analyst firm, concluded that the "TEMU app is purposefully and intentionally loaded with

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

Exhibit A, Page 17

tools to execute virulent and dangerous malware and spyware activities on user devices which have downloaded and installed the TEMU app."[1]

36.    The analysis went so far as to claim that Defendant PDD Holdings was a "fraudulent company" and that "its shopping app TEMU is cleverly hidden spyware that poses an urgent security threat to U.S. national interests."

37.    Among the primary findings of the report were the following:

a.    "The app has hidden functions that allow for extensive data exfiltration unbeknown to users, potentially giving bad actors full access to almost all data on customers' mobile devices."

b.    "Great efforts were taken to intentionally hide the malicious intent and intrusiveness of the software."

c.    "We engaged numerous independent data security experts to decompile and analyze TEMU app's code, integrated with experts of our own staff, and analysts who have written independently in the public domain."

d.    "Contributing to the danger of mass data exfiltration is the fast uptake rate of the TEMU app: over 100 million app downloads in the last 9 months, all in U.S. and Europe. TEMU is not offered in China."

e.    "The TEMU app development team includes 100 engineers who built the Pinduoduo app, which earned a suspension from the Defendants Play Store."

f.    "Pinduoduo app got reinstated by removing the 'bad parts,' some of which were identically utilized as components of the TEMU app, strongly indicating malicious intent."

g.    "We strongly suspect that TEMU is already, or intends to, illegally sell stolen data from Western country customers to sustain a business model that is otherwise doomed for failure."

38.    Additionally, the analysis concluded that the Temu App contains malware, spyware, and other means to "plunder" user data: "TEMU has laid an extensive software

---

[1] See "We believe PDD is a Dying Fraudulent Company and its Shopping App TEMU is Cleverly Hidden Spyware that Poses an Urgent Security Threat to U.S. National Interests" found at: https://grizzlyreports.com/we-believe-pdd-is-a-dying-fraudulent-company-and-its-shopping-app-temu-is-cleverly-hidden-spyware-that-poses-an-urgent-security-threat-to-u-s-national-interests/

[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL

foundation to recklessly plunder its customers' data. Our staff analysis, verified by numerous expert confirmations, both proprietary experts we hired, plus those independently published in the public domain, find malware, spyware, and several levels of exceptionally threatening software behavior."

39.     The analysis further found that the Temu App has the capability to hack users' phones and override data privacy settings that users have purposely set to prevent their data from being accessed.

40.     Technical analysis of the Temu App found "all the signs of red-flag concern," noting that "[t]he calls to outside device data and functions that violate users' privacy are far more aggressive than any well-known consumer shopping app."

41.     Further analysis found "a stack of software functions that are completely inappropriate to and dangerous in this type of software."

42.     For example, the "TEMU app is referencing systems data outside the bounds of TEMU's own app. TEMU seemingly reads the user's system logs. This gives TEMU the ability to track user actions with other apps running on the user's device."

43.     It is believed that the Temu App also collects identifying information unique to a user's device. Specifically, "TEMU asks for the MAC address, and other device information, and inserts it into a JSON object to be sent to the server."

44.     The Temu App also has the capability to take screenshots of users' phones and store those to a file.

45.     The Temu also has the ability to read and transmit files on the user's system "with little or no encryption."

46.     The Temu can access users' cameras and microphones whenever the app is running, such a function provides a means by which the Temu App can surreptitiously collect user biometric data and information such as video, facial image, and voiceprint data.

47.     Many of the categories of data and information collected by Defendants are particularly sensitive. For example, in addition to highly sensitive biometric information discussed below, Defendants also collect physical and digital location tracking data that is highly invasive of Temu users' privacy rights. "Location data is among the most sensitive personal information that a user can share with a company . . . Today, modern smartphones can reveal location data beyond a mere street address. The technology is sophisticated enough

8

to identify on which floor of a building the device is located." Over time, location data reveals private living patterns of Temu users, including where they work, where they reside, where they go to school, and when they are at each of these locations. Location data, either standing alone, or combined with other information, exposes deeply private and personal information about Temu users' health, religion, politics and intimate relationships.

48.    The Temu data collection begins as soon as the app is downloaded. As reported in a recent technical report: "'TEMU sends a lot of detailed user and system data elements as soon as the app is loaded.' The user's system gets queried in detail, so all that information is available to send to TEMU servers. (As noted above, this includes the device's unique MAC address.) No user permission is required to gather any of this category of information." Temu contains "a complete arsenal of tools to exfiltrate virtually all the private data on a user's device and perform nearly any malign action upon command trigger from a remote server."

49.    Additionally, individuals who are not Temu users and have never signed up for the platform may also be adversely impacted. Unbeknownst to them, non-users who engage in electronic communications with Temu users, such as through email or text messages, may have their private communications subject to harvesting by Defendants who have broad access to Temu users' devices.

### 2. The Surreptitious Nature of The Apps Data Mining.

50.    The Temu App contains technology (encrypt, decrypt or shift integer signals) that obscures the source code and system calls so that intrusive and dangerous calls are harder to detect when an app store or others perform security scans. In addition, the Temu App contains a runtime.exec() function that allows Temu to get compiled code onto the user's system at runtime that has not been seen by any security detection scans. These features alone demonstrate that the Temu App is purposefully designed to be "very virulent malware/spyware."

51.    Issues uncovered with the app "occur in parts of the code that are proprietary, obscured, and/or from a code library rarely used, poorly programmed by a niche company." This is inconsistent with common practice and appears to be designed to obscure the dangerous features of the app so that they will not be disclosed to the public and will avoid scrutiny by the app stores that provide the app to the public.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

52.     For example, a technical analysis found a "package compile" function that was "not visible to security scans before or during installation of the app, or even with elaborate penetration testing." As a result, "TEMU's app could have passed all the tests for approval into the Defendants' Play Store, despite having an open door built in for an unbounded use of exploitative methods."

53.     In addition, the Temu App seeks to obscure the permissions that are given to the app to access information on users' phones. "[M]any of these permissions in TEMU's source code are not listed in their Android Manifest file, which is the standardized overview source for an app."

54.     The Temu App deceptively requests permissions in ways that do not clearly inform users that they are providing certain permissions to the App. Accordingly, because the Temu App "masks its intentions" by using such deceptive means, "You wouldn't suspect that the TEMU app contains a full stack of malware/spyware tools to do just about anything it wants with your phone and get nearly anything stored on it sent to its own servers in the background."

55.     The Temu App also contains functions to alert the App if a debugger is engaged. Such a feature is likely incorporated into the App "to obstruct or obscure analysis of the app, and most likely to change app behavior if an analyst is inspecting it dynamically."

**3. Temu Subjects User Data To Misappropriation By Chinese Authorities.**

56.     The data privacy violations documented with the Temu App are particularly concerning not only because they subject user data to unauthorized collection and potential sale to third parties, but also because Temu's parent is a China-based company that is subject to Chinese law that requires companies to provide user data to the government upon request. As a technical analysis of the Temu App has noted, "Your personal data – much more than you ever assumed – is resold indiscriminately for marketing purposes, and in all probability available to Chinese Security authorities for data mining purposes. Chinese Government security agents or their AI computers might be looking at what products you or your family buy on TEMU as a source of leverage, influence, manipulation, 'cross-border remote justice', surveillance, or more."

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

57.    As experts and government authorities have repeatedly observed, under applicable law, user data owned by Chinese companies is available on command to officials of the Chinese communist government. The Chinese government's ongoing efforts to acquire such private user data from American citizens—both legally and illegally—are well documented.

58.    As U.S. Senators have explained, "Security experts have voiced concerns that China's vague patchwork of intelligence, national security, and cybersecurity laws compel Chinese companies to support and cooperate with intelligence work controlled by the Chinese Communist Party."

59.    Inherent in Chinese ownership of companies collecting American users' private and personally identifiable information. During the broadcast, among other things, a former member of the U.S. intelligence community observed that what makes the possession of U.S. user data by China-affiliated companies "particularly concerning" is that "[t]he Chinese have fused their government and their industry together so that they cooperate to achieve the ends of the state." As Senator Hawley observed during the broadcast, for example, the Chinese-owned parent company of TikTok had an express legal obligation to share such private user data with the Chinese government: "under Chinese law, TikTok, ByteDance, the parent, is required to share data with the Chinese Communist Party"; "all it takes is one knock on the door of their parent company, based in China, from a Communist Party official for that data to be transferred to the Chinese government's hands, whenever they need it."

60.    In testimony given to Congress in November 2022, FBI Director Christopher Wray reiterated these concerns, noting that Chinese law requires Chinese companies to "do whatever the government wants them to in terms of sharing information or serving as a tool of the Chinese government. And so that's plenty of reason by itself to be extremely concerned."

61.    China-based companies are required by law to secretly provide consumer data to the government upon demand.

62.    The message contained in each of China's state security laws passed since the beginning of 2014 is clear: everyone is responsible for the party-state's security. According to the CCP's definition of state security, "the Party's political leadership is central…" And the party expects Chinese people and citizens to assist in collecting intelligence. The Intelligence Law states "any organization and citizen shall, in accordance with the law, support, provide

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

assistance, and cooperate in national intelligence work, and guard the secrecy of any national intelligence work that they are aware of…" Not only is everyone required to participate in intelligence work when asked, but that participation must be kept secret.

### C. Temu Uses Unfair Business Practices to Get Users to Engage with the App.

63. Defendants actively utilize manipulative and deceptive practices in order to maximize the number of users who sign up to use the app, thereby maximizing the amount of data that Defendants can misappropriate. According to one commentator, "TEMU is a notoriously bad actor in its industry. We see rampant user manipulation, chain-letter-like affinity scams to drive signups, and overall, the most aggressive and questionable techniques to manipulate large numbers of people to install the app."

64. Defendants seek to induce users to sign up for the Temu App with the promise of low-cost, high-quality goods manufactured in China. Defendants underscore this aspect of the platform through a variety of mechanisms such as pop-ups with wheels to spin for discounts, tokens to collect, and countdown clocks.

65. These tactics have been wildly successful: "PDD's TEMU online marketplace is being reported as among the fastest uptaken apps in history."

66. These practices have allowed Defendants to maximize their access to user data through the false promise of low-cost, high-quality goods. Moreover, they further demonstrate that Defendants' real business is not providing a platform for the sale of quality merchandise, but rather obtaining access to user data under false pretenses, which they then misappropriate and seek to monetize.

67. Defendants utilize additional deceptive marketing techniques to induce users to sign up for the platform and grant Defendants access to user data. For example, Defendants run what has been described as an "affinity scam" or "chain letter" like tactic where users are repeatedly urged to sign up their friends and acquaintances in order to expand the number of users whose data Defendants may then access through the App.

68. Among other things, Temu offers credit and free items to users who get their friends and acquaintances to sign up for the app. "Those who do register are subjected to a bombardment of emails and app notifications."

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

69.      "Once you give TEMU your personal information, you will be repeatedly spammed, hounded, nagged, and bribed to get your friends and family to give TEMU their personal information. When users fall down this rabbit hole (getting that Nintendo Switch absolutely free), TEMU sends a torrent of popup sequences milking users for 'just one more contact'."

70.      In addition, Temu users are bombarded by notifications and spam from third parties other than Defendants. These emails and notifications occur even after users delete the app from their devices and even when users seek to block such notifications.

71.      Moreover, Temu has utilized online "influencers" to harvest new users on an even larger scale. "There are now literally thousands of so-called 'influencers' hawking TEMU referrals on Reddit, YouTube, TikTok, and also Minecraft, Roblox, Discord... the pitch is: 'You don't have to buy anything, just sign up!'" "If you have a social media presence, TEMU will figure that out and will start to spam you – every day – to induce you to create videos promoting TEMU, for which they promise to pay."

72.      Defendants attract and maintain users through other fraudulent means. For example, "TEMU ... compensates users to write reviews," which are then "obviously skewed positive." Moreover, reviews are categorized in a deceptive manner with reviews characterized as "five stars" positive reviews when in reality they contain extremely negative comments about the platform.

73.      Finally, as illustrated by its gamified nature, Temu is designed to be highly addictive. As one report notes, "[t]he app successfully keeps people hooked. The average user spends around 28 minutes a day on the app, according to Sensor Tower, nearly double the 16 minutes spent on Amazon." The more time users spend on the app, the more data is available for covert collection by Defendants in violation of users' right to privacy in their personal data.

74.      As one analysis observes, the addictive tactics extend not only to users continued use of the platform, but also inducing individuals to sign up for the app: "Your behavior will be categorized and siloed. If these kinds of inducements exert an addictive pull on your brain, AI pattern recognition will guarantee you will see a lot more of them."

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

**C. Plaintiffs' Have Been Harmed by Temu's Violations.**

75. The United States Supreme Court has recognized that, in contemporary society, cell phones are so ubiquitous and inextricably intertwined with the user's personal privacy that the devices have become "almost a 'feature of human anatomy.'" *Carpenter v. United States, 138 S. Ct. 2206, 2218 (2018)* (quoting *Riley v. California, 573 U.S. 373, 385 (2014)*).

76. As a result of their multiple violations of users' data privacy, Defendants possess identifying information, biometric identifiers and information, and other data sufficient to create a file of private and personally identifiable data and content for Plaintiffs. Such files can be supplemented over time with additional private and personally identifiable user data and content, and all of this private and personally identifiable data and information has been, is, and will be used in the past, the present, and the future for economic and financial gain.

77. Meanwhile, Plaintiffs have incurred, and continue to incur, harm as a result of the invasion of privacy stemming from Defendants' possession of their private and personally identifiable data and content – including their user identifiers, biometric identifiers and information, and other data.

78. Plaintiffs have suffered and continue to suffer harm in the form of diminution of the value of their private and personally identifiable data and content as a result of Defendants' surreptitious and unlawful activities.

79. Plaintiffs have a reasonable expectation of privacy in the private and personally identifiable data and content on their mobile devices.

80. Through the unauthorized collection of their data, Plaintiffs' may have suffered additional injuries. The data collected from Temu users by these unauthorized means can be misused by Defendants themselves in ways that are not authorized, including the information being sold or given to unauthorized third parties without the consent of Plaintiffs.

81. Temu users may be subjected to additional injuries, including the provision or sale of their data to unauthorized third parties or the use of their data in ways that users did not authorize by Defendants themselves.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT OF 1986 (ECPA),**

**18 U.S.C. §§ 2510 ET SEQ.**

**(All Plaintiffs Against All Defendants)**

82.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

83.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510, et seq., prohibits the interception of any wire, oral, or electronic communications without the consent of at least one authority party to the communication. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." (*see*; 18 U.S.C. § 2510(4)).

84.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." (*see*; 18 U.S.C. § 2510(4)).

85.    "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." (*see*; 18 U.S.C. § 2510(4)).

86.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." (*see*; 18 U.S.C. § 2510(4)).

87.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that affects interstate or foreign commerce" (*see*; 18 U.S.C. § 2510(4)).

88.    For the purposes of the ECPA, Defendants, as a corporation are each defined as a "person."

89.    The Temu App/platform was designed with malware written into its code that secretly accesses texts, emails and other content on users' computers, phones and/or mobile devices, each constituting a "device or apparatus."

90.    Defendants used the Temu app/platform to intercept wire, oral, or electronic communication through electronic means on users' devices.

15

91.    For the purposes of 18 U.S.C. § 2510(12), Plaintiffs' texts, emails, electronic interactions with others on social media and websites, sensitive personal information, and data, and interactions with other individuals and websites are "electronic communication(s)."

92.    Through the Temu App/platform Defendants surreptitiously intercepted plaintiffs' "electronic communication[s]".

93.    Plaintiffs have an expectation of privacy in such communications, and exercised a reasonable expectation of privacy concerning the transmission of those messages, and reasonably believed that their electronic communications were not being intercepted, recorded, copied, disseminated, and/or misappropriated.

94.    Plaintiffs' electronic communications were intercepted during transmission, without their consent and for the unlawful and/or wrongful purpose of monetizing private information and data, including by using their private information and data to develop marketing and advertising strategies and utilizing user data for other commercial advantage.

95.    Defendants were not parties to Plaintiff's communications.

96.    Defendants are sophisticated parties, who at all relevant times knowingly, willfully and intentionally intercepted Plaintiffs electronic communications through the Temu App/platform.

97.    Plaintiffs did not consent to Defendants' interception, disclosure, use and/or misuses and misappropriation of their electronic communications.

98.    Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, and/or attempting to intercept, messages transmitted by Plaintiffs who have used the Temu app/platform.

99.    Defendants violated 18 U.S.C. § 2511(1)(a), by using Plaintiffs' intercepted communications and data intentionally for corporate gain and profit.

100.    Defendants were unjustly enriched by their unauthorized interception of Plaintiffs' electronic communications.

101.    Defendants violated 18 U.S.C. § 2511(1)(a), by making Plaintiffs' communications accessible by third parties, including the Chinese Communist Party and foreign governmental entities whose interests are opposed to those of United States citizens.

16

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

102.    Plaintiffs suffered and will continue to suffer damages including but not limited to loss of their information and loss of money and costs incurred, all of which have ascertainable value to be proven at trial.

103.    Pursuant to 18 U.S.C. § 2520, Plaintiffs have been damaged by the interception, disclosure, and/or use of their communications in violation of the ECPA and are each entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Defendants as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT,
## 18 U.S.C. §§ 1030
### (All Plaintiffs Against All Defendants)

104.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

105.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, referred to as "CFAA," regulates fraud and related activity in connection with computers, and makes it unlawful to intentionally access a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, thereby obtaining information from such a protected computer, within the meaning of U.S.C. § 1030(a)(2)(C).

106.    18 U.S.C. § 1030(a)(5)(A)(i) makes it unlawful to "knowingly cause the transmission of a program, information, code, or command and as a result of such conduct, intentionally cause damage without authorization, to a protected computer," of a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

107.    18 U.S.C. § 1030(g) provides a civil cause of action to "any person who suffers damage or loss by reason of a violation of CFAA."

108.    Defendants violated 18 U.S.C. § 1030 by intentionally accessing Plaintiffs' computers without authorization or by exceeding authorization, and by obtaining information from a protected computer.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

109.    Plaintiffs' computer, smartphone, and/or mobile devices, such as a tablet or iPad is a "protected computer . . . which is used in interstate commerce and/or communication" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

110.    Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of data and programs on Plaintiffs' protected computers.

111.    Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) by storing sniffing code to access, collect, and transmits details of Plaintiffs' web activities and communications.

112.    Defendants violated 18 U.S.C. § 1030(a)(5)(A)(ii) by intentionally accessing Plaintiffs' protected computers without authorization, and as a result of such conduct, recklessly caused damage to Plaintiffs' computers by weakening the integrity of data and/or system and/or information stored on Plaintiffs protected computers.

113.    Defendants violated 18 U.S.C. § 1030(a)(5)(A)(ii) by surreptitiously installing dangerous malware and spyware onto Plaintiffs' protected computers causes the Plaintiffs to suffer damage through the "impairment to the integrity or availability of data, a program, a system or information."

114.    Defendants' unlawful access to Plaintiffs' computers and electronic communications has caused Plaintiffs irreparable injury.

115.    Plaintiffs have suffered loss, as defined in 18 U.S.C. § 1030(e)(11). In expending "reasonable cost" associated with Plaintiffs responding to the violating offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service or the data breach.

116.    Plaintiffs have suffered damages by reason of Defendants' violations, including, without limitation, violation of the right of privacy, and disclosure of personal information that is otherwise private, confidential, and not of public record.

117.    As a result of Defendants' conduct, Plaintiffs have suffered loss and damages during any one-year period aggregating at least $5,000 in real economic damages.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA COMPREHENSIVE DATA ACCESS AND FRAUD ACT,

### CAL. PEN CODE. § 502

### (All California Plaintiffs Against All Defendants)

118.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

119.    Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction." Smart phone devices with the capability of using web browsers are "computers" within the meaning of the statute.

120.    Defendants violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using Plaintiffs' "computer" browsing data.

121.    Defendants were unjustly enriched when it surreptitiously acquired Plaintiffs' sensitive and valuable personal information without permission and used it for Defendants' financial benefit.

122.    Plaintiffs retain a stake in the profits Defendants earned from their personal data, as under the circumstances, it is unjust for the Defendants to retain those profits.

123.    Defendants accessed, copied, took, analyzed, and used data from Plaintiffs' computers in and from the State of California, where the Defendants used servers that provided communication links between Plaintiffs' devices and the Defendants', which allowed the Defendants to access and obtain Plaintiffs' data. Accordingly, the Defendants caused the access of Plaintiffs' computers from California, and is therefore deemed to have accessed Plaintiffs' computers in California.

124.    As a direct and proximate result of the Defendants' unlawful conduct within the meaning of Cal. Penal Code § 502, the Defendants have caused actual losses to Plaintiffs and has been unjustly enriched in an amount to be proven at trial.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

125.    Plaintiffs seek compensatory damages and/or disgorgement of profits in an amount to be proven at trial.

126.    Plaintiffs are entitled to exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because the Defendants' violations were willful and, upon information and belief, the Defendants are guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

127.    Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT,
## CAL. PENAL CODE §§ 630, ET SEQ.
### (All California Plaintiffs Against All Defendants)

128.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

129.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§630 to 638.

130.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq. ("CIPA") finding that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*. § 630. Thus, the intent behind CIPA is "to protect the right of privacy of the people of this state." *Id*.

131.    Cal. Pen. Code § 631(a) imposes liability upon: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

with, employs, or conspires with any person or persons to lawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . ."

132.    Cal. Pen. Code § 632(a) imposes liability upon: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio."

133.    Plaintiffs have an expectation of privacy in their private and personally identifiable data and information, and they exercised a reasonable expectation of privacy concerning the transmission of such information.

134.    Under either section of the CIPA quoted above, a defendant must show it had the consent of all parties to a communication. However, without the consent of either the sender or recipient, Defendants intercepted and recorded messages and electronic communications transmitted using the Temu App/platform without Plaintiffs' consent or knowledge.

135.    Defendants knowingly and intentionally used and continue to use the Temu App/platform and associated servers and other computer devices, to read, attempt to read, learn, attempt to learn, eavesdrop, record, and/or use electronic communications containing private data from Plaintiffs, these electronic communications were and are in transit, originating in or sent to California, and without the authorization or consent of Plaintiffs.

136.    Acts by Defendants in violation of the CIPA occurred in the State of California because those acts resulted from business decisions, practices, and operating policies that Defendants developed, implemented, and utilized in the State of California and which are unlawful and constitute criminal conduct in the state of California.

137.    Defendants profited and continue to profit in the State of California as a result of these repeated and systemic violations of CIPA. Defendants' unlawful conduct, which occurred in the State of California, harmed and continues to harm Plaintiffs.

138.    The communications intercepted by Defendants include "contents" of electronic communications exchanged between Plaintiffs, on the one hand, and third parties through shared communications.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

139.    Defendants recorded and stored such private message content, separate from the process of transmitting the message to the intended recipient.

140.    Defendants purposefully designed the Temu app/platform in a way that they knew Plaintiffs' privacy rights would be violated, in that their messages would be unlawfully intercepted and recorded.

141.    Under Cal. Penal Code § 631(a) The following constitute "machine[s], instrument[s], or contrivance[s]: (a) Plaintiff's personal computing devices; (b) the computer codes and programs Defendants used to effectuate the interception of communications; (c) Defendants' servers; (d) and the plan Defendants carried out to effectuate the interception of the communications that were exchanged with Plaintiffs'.

142.    In the alternative, Defendants' purposeful scheme that facilitated its interceptions falls under the broad statutory catch-all category of "any other manner".

143.    The private data Defendants collected constitutes "confidential communications," as that term is used in Cal. Pen. Code § 632(a), because Plaintiffs have an objectively reasonable expectation of privacy in their communications.

144.    Plaintiffs did not consent to Defendants' interception, disclosure, and/or use of their electronic communications.

145.    The unauthorized interceptions described herein are not covered by any business exception because the interceptions were not required to facilitate the communications.

146.    Plaintiffs have suffered actual losses by reason of these violations, including, but not limited to, violation of their rights to privacy and loss of value in their personally identifiable information.

147.    Plaintiffs have a property right in their private communications, videos and messages such that interception of those messages violated those rights and therefore caused them injuries and damages.

148.    Plaintiffs suffered further economic injury as a result of Defendants' unlawful and unauthorized interceptions and recordings of communications. The battery, memory, CPU and bandwidth of their cellular devices have been compromised and they incurred additional data and electricity costs that they otherwise would not have.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

149.    Pursuant to Cal. Pen. Code § 637.2, Plaintiffs have been injured by the violations of Cal. Pen. Code §§ 631, 632, and each seeks damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive or other equitable relief.

150.    Plaintiffs have also suffered irreparable injury from these unauthorized acts of disclosure; their personal, private, and sensitive data have been collected, viewed, accessed, stored, and used by Defendants, and have not been destroyed. Due to the continuing threat of such injury, Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,
## CAL. BUS. & PROF. CODE. §§ 17200 ET SEQ.

### (All California Plaintiffs Against All Defendants)

151.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

152.    California Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

153.    The Defendants' "unlawful" acts and practices include its violation of the Federal Wiretap Act, 18 U.S.C. § 2510, et seq.; the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632; the California Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq.; and Invasion of Privacy.

154.    The Defendants' conduct violated the spirit and letter of these laws, which protect property, economic and privacy interests and prohibit unauthorized disclosure and collection of private communications and personal information.

155.    The Defendants'' "unfair" acts and practices include its violation of property, economic and privacy interests protected by the statutes identified above.

156.    Plaintiffs have suffered injuries-in-fact, including the loss of money and/or property as a result of the Defendants' unfair and/or unlawful practices. Plaintiffs have suffered unauthorized disclosure and taking of their personal information which has value, as demonstrated by its use and sale by the Defendants'.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

157.    Plaintiffs have suffered harm in the form of diminution of the value of their private and personally identifiable data and content.

158.    The Defendants' actions caused damage to, and loss of, Plaintiffs' property right to control the dissemination and use of their personal information and communications.

159.    The Defendants reaped unjust profits and revenues in violation of the UCL. This includes the Defendants profits and revenues from their targeted-advertising. Plaintiffs seek restitution and disgorgement of these unjust profits and revenues.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW,**
**CAL BUS. & PROF. CODE. §§ 17500 ET SEQ.**
**(All California Plaintiffs Against All Defendants)**

160.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

161.    California's False Advertising Law (the "FAL") – Cal. Bus. & Prof. Code §§ 17500, et seq. – prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services.

162.    Defendants' advertising and other statements regarding the Temu App/platform are, and at all relevant times were, highly misleading.

163.    Defendants do not disclose at all, or do not meaningfully disclose, the private and personally identifiable data and content – including user/device identifiers, biometric identifiers and information, electronic communications, and private data and information – that they have collected and transferred from the Plaintiffs' devices and computers. Nor do Defendants disclose that the Plaintiffs' private and personally identifiable data and content have been made available to the Chinese Communist Party and foreign government entities.

164.    Reasonable consumers, like the Plaintiffs', are – and at all relevant times were – likely to be misled by Defendants' misrepresentations.

165.    Reasonable consumers lack the means to verify Defendants' representations concerning their data and content collection and use practices, or to understand the fact or significance of Defendants' data and content collection and use practices.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

166.     Plaintiffs have been harmed and have suffered economic injury as a result of Defendants' misrepresentations. First, they have suffered harm in the form of diminution of the value of their private and personally identifiable data and content.

167.     Plaintiffs have a property interest in the personally identifiable information and other personal information taken by Defendants. There is a market for such data and Plaintiffs have been deprived of the money or property they would have received for the data improperly collected by Defendants.

168.     Second, they have suffered harm to their devices. The battery, memory, CPU and bandwidth of such devices have been compromised, and as a result the functioning of such devices has been impaired and slowed.

169.     Third, they have incurred additional data usage and electricity costs that they would not otherwise have incurred.

170.     Fourth, they have suffered harm as a result of the invasion of privacy stemming from Defendants' accessing their private and personally identifiable data and content – including user/device identifiers, biometric identifiers and information, and other private data and information.

171.     Defendants, as a result of their misrepresentations, have been able to reap unjust profits and revenues. This includes Defendants' profits and revenues from their targeted advertising, revenue from the sale of goods on the Temu App/platform, and increased consumer demand for and use of Defendants' other products and services. Plaintiffs seek restitution and disgorgement of these unjust profits and revenues.

172.     Unless restrained and enjoined, Defendants will continue to misrepresent their private and personally identifiable data and content collection and use practices and will not recall and destroy Plaintiffs' wrongfully collected private and personally identifiable data and content. Accordingly, injunctive relief is appropriate.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE RIGHT OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION
### (All California Plaintiffs Against All Defendants)

25

173.     Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

174.     The California Constitution and Common Law protect consumers from invasions of their privacy and intrusion upon seclusion.

175.     The right to privacy in California's constitution creates a right of action against private entities such as the Defendants.

176.     Plaintiffs' expectation of privacy is deeply enshrined in California's Constitution. Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy."

177.     The phrase "and privacy" was added by the "Privacy Initiative" adopted by California voters in 1972. After voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone…It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom. BALLOT PAMP., PROPOSED STATS. & AMENDS. TO CAL. CONST. WITH ARGUMENTS TO VOTERS, GEN. ELECTION *26 (Nov. 7, 1972).

178.     The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including the Defendants.

179.     To plead a California constitutional privacy claim, "a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy."

180.     The Defendants collected the data with the intent to intrude upon users' seclusion and invade their constitutional privacy.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

181.    As described herein, The Defendants have intruded upon the following legally protected privacy interests:

    a.  The California Invasion of Privacy Act as alleged herein;

    b.  The California Comprehensive Data Access and Fraud Act as alleged herein;

    c.  A Fourth Amendment right to privacy contained on personal computing devices, including web-browsing history, as explained by the United States Supreme Court in the unanimous decision of *Riley v. California*;

    d.  The California Constitution, which guarantees Californians the right to privacy;

182.    The Defendants' Privacy Policy and policies referenced therein and other public promises it made not to track or intercept Plaintiffs' communications or access their computing devices and web-browsers while in a private browsing session.

183.    Plaintiffs had a reasonable expectation of privacy under the circumstances in that Plaintiffs could not reasonably expect the Defendants would commit unlawful and offensive acts in violation of federal and state civil and criminal laws, and the Defendants would and do secretly track their communications or access their computing devices.

184.    The Defendants' actions constituted a serious invasion of privacy in that it, invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy in data contained on personal computing devices, including conversations, and other personal data.

185.    Violated dozens of state criminal laws on wiretapping and invasion of privacy, including the Federal Wire Tap Law and The California Invasion of Privacy Act;

186.    Invaded the privacy rights of hundreds of millions of consumers (including Plaintiffs) without their consent.

187.    Constituted the unauthorized taking of valuable information from hundreds of millions of consumers (including Plaintiffs) through deceit.

188.    Further violated Plaintiffs' reasonable expectation of privacy via the Defendants' review, analysis, and subsequent use of Plaintiffs' private conversations and data that Plaintiffs considered sensitive and confidential.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

189.    The surreptitious and unauthorized tracking of the internet communications of Plaintiffs, constitutes an egregious breach of social norms that is highly offensive.

190.    The Defendants' invasion of privacy into Plaintiffs' internet communications and their computing devices, was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

191.    Following the Defendants' unauthorized interception of the sensitive and valuable personal information, the subsequent analysis and use of that private data to develop and refine profiles on Plaintiffs violated their reasonable expectations of privacy.

192.    Wiretapping and surreptitious recording of communications is highly offensive behavior.

193.    The Defendants lacked a legitimate business interest in tracking users while browsing the internet in incognito mode without their consent.

194.    Plaintiffs have been damaged by the Defendants' invasion of their privacy and they are entitled to just compensation and injunctive relief.

## **EIGTH CAUSE OF ACTION**
## **INTRUSION UPON SECLUSION**
### **(All California Plaintiffs Against All Defendants)**

195.    Plaintiffs reallege and incorporate by reference, as through fully set forth herein, each and every allegation set forth above.

196.    Plaintiffs asserting claims for intrusion upon seclusion must plead: "(1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person."

197.    In carrying out its scheme to track and intercept Plaintiffs' communications while they were using the Temu App/platform, the Defendants violated Plaintiffs' rights to privacy and seclusion.

198.    The Defendants intentionally intruded upon Plaintiffs' solitude or seclusion in that it effectively placed itself in the middle of conversations to which it was not an authorized party.

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

199.    The Defendants' tracking and interception were not authorized by Plaintiffs, the Websites, and/or any other third party with which they were communicating with.

200.    The Defendants' intentional intrusion into their internet communications and their computing devices was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

201.    The taking of personally identifiable information from Plaintiffs through deceit is highly offensive behavior.

202.    Secret monitoring of private web browsing is highly offensive behavior.

203.    Wiretapping and surreptitious recording of communications is highly offensive behavior.

204.    Plaintiffs have been damaged by the Defendants' invasion of their privacy and are entitled to reasonable compensation including but not limited to disgorgement of profits related to the unlawful internet tracking.

## **PRAYER**

WHEREFORE, Plaintiffs respectfully requests that this court:

      a. Entry of an order declaring that Defendants' actions, as set forth in this Complaint, violate the law;

      b. That the Plaintiffs be awarded all costs and litigation expenses incurred in bring this action;

      c. For reasonable attorneys' fees and costs incurred in bringing this action;

      d. A judgment in favor of Plaintiffs awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CDAFA, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

      e. Entry of judgment in favor of Plaintiffs awarding compensatory damages, including statutory damages where available, to Plaintiffs and each of them, against Defendants for all damages sustained as a result of

29

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

f. Award Plaintiffs pre- and post-judgment interest;

g. Award Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses;

h. Order disgorgement of all of Defendants' profits that were derived, in whole or in part, from the Defendants' interception and subsequent use of Plaintiffs' communications;

i. Award punitive damages in an amount to prevent Defendants' further misconduct;

j. Entry of a permanent injunction, including public injunctive relief, enjoining;

k. Grant Plaintiffs such further relief as the Court deems appropriate. Plaintiffs and each of them seek an award of actual damages to be determined at trial.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury of all issues so triable.

POTTER HANDY, LLP

Dated: March 7, 2025

_____

Krista Hemming
Attorneys for Plaintiffs

30

**[UNLIMITED] COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

POTTER HANDY, LLP
Mark Potter, Esq., SBN 166317
Christina Carson, Esq. SBN 280048
Krista Hemming, SBN 304213
Mail: 100 Pine St., Ste. 1250
San Francisco, CA 94111
(415) 534-1911; (888) 422-5191 fax
TEMUlit@potterhandy.com
Attorneys for Plaintiffs

**COMPLAINT: Attachment 1**
BREEAUNNA HENRY, ET AL., V. WHALECO, INC., d/b/a TEMU, ET AL.,

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | Jason Vallade | AK | | 35 | Sebrena Lynn | AL |
| 3 | Natalie Smyre | AK | | 36 | Shane Byrd | AL |
| 4 | Alisha Jones | AL | | 37 | Shirley Burrell | AL |
| 5 | Angela Caudle | AL | | 38 | Tammy Henderson | AL |
| 6 | Audra Peters | AL | | 39 | Tracey Shockey | AL |
| 7 | Billy Durkee | AL | | 40 | Tremeka Battle | AL |
| 8 | Camakia Johnson | AL | | 41 | Troy Jerome | AL |
| 9 | Casey Pickens | AL | | 42 | Vakari Hutchinson | AL |
| 10 | Chad Mccain | AL | | 43 | Velma Mccall | AL |
| 11 | Christopher Collier | AL | | 44 | Yulondra Rhone | AL |
| 12 | Cotina Sanders | AL | | 45 | Alice Miller | AR |
| 13 | Dana Ravizee | AL | | 46 | Betty Mathis | AR |
| 14 | Daniel Erickson | AL | | 47 | Brittney Williams | AR |
| 15 | Deborah Colley | AL | | 48 | Cassandra Summers | AR |
| 16 | Deborah Heitzman | AL | | 49 | Ginger Kelley | AR |
| 17 | Dusty Free | AL | | 50 | Helen Brown | AR |
| 18 | Elayne Terry | AL | | 51 | Karen Mitchell | AR |
| 19 | Giovanni Gilbreath | AL | | 52 | Rick Myers | AR |
| 20 | James Sugg | AL | | 53 | Sharon Johnson | AR |
| 21 | Jamie Earp | AL | | 54 | Terry Gibson II | AR |
| 22 | Jessica Tillery | AL | | 55 | Aimee Solano | AZ |
| 23 | Karen Scott | AL | | 56 | Anthony Hernandez | AZ |
| 24 | Leslie Stone | AL | | 57 | April Martinez | AZ |
| 25 | Maria Sanchez | AL | | 58 | Brandy Reinecke | AZ |
| 26 | Marie Hubbard | AL | | 59 | Carley Capps | AZ |
| 27 | Melissa Fair | AL | | 60 | Debbie Murray | AZ |
| 28 | Michelle Zipp | AL | | 61 | Garrett Brown | AZ |
| 29 | Monica Evans | AL | | 62 | Gil Gordian | AZ |
| 30 | Pamela Lowe | AL | | 63 | Hurticine Chukwudire | AZ |
| 31 | Penny Gordon | AL | | 64 | Javier Diaz | AZ |
| 32 | Phyllis Lett | AL | | 65 | Lashanda Daviss | AZ |
| 33 | Phyllis Meyer | AL | | 66 | Laura Hathaway | AZ |
| 34 | Sarritha Scales | AL | | 67 | Melissa Carter | AZ |

| 68 | Mike McKeon | AZ |
|----|-------------|-----|
| 69 | Willey Hathaway | AZ |
| 70 | Ahmed Afridi | CA |
| 71 | Alec Pilavian | CA |
| 72 | Alex Bell | CA |
| 73 | Alexis Sixtos | CA |
| 74 | Alexis Waite | CA |
| 75 | Alicia Bernal | CA |
| 76 | Amanda Koga | CA |
| 77 | Angela Maldonado | CA |
| 78 | Angela Martinez | CA |
| 79 | Angie Madkins | CA |
| 80 | Ant George | CA |
| 81 | Anthony Mitchell | CA |
| 82 | Anthony Ortiz | CA |
| 83 | Ashanti Phannix | CA |
| 84 | Benjamin Pinion | CA |
| 85 | Bertha Meza | CA |
| 86 | Brittney Falsey | CA |
| 87 | Carolyn Harrison | CA |
| 88 | Caron James | CA |
| 89 | Carrie Roberts | CA |
| 90 | Chanell Willis | CA |
| 91 | Charte Meth | CA |
| 92 | Cheryl Sauer | CA |
| 93 | Chloe Ceccia | CA |
| 94 | Christian Loza | CA |
| 95 | Christian Tyrone Posadas | CA |
| 96 | Christian Vetrano | CA |
| 97 | Christina Quinonez | CA |
| 98 | Christopher Butler | CA |
| 99 | Damen Barbee | CA |
| 100 | Danielle Koepke | CA |
| 101 | Dava Taylor | CA |
| 102 | David Pichon | CA |
| 103 | Dawn Rubio | CA |
| 104 | Devin Franke | CA |
| 105 | Dionne Young | CA |
| 106 | Dustin Barnett | CA |
| 107 | Dylan Vu | CA |
| 108 | Eli Spector | CA |
| 109 | Elias Ochoa | CA |
| 110 | Emlyn Coverdale | CA |
| 111 | Ethan Lopez | CA |

| 112 | Felipe Samano | CA |
|-----|---------------|-----|
| 113 | Fernando Caire | CA |
| 114 | Gail Douglas | CA |
| 115 | Gayle Brownlee | CA |
| 116 | George Nino | CA |
| 117 | Hazel Ramirez | CA |
| 118 | Ilan Justh | CA |
| 119 | Irais Vital | CA |
| 120 | Isaiah Rodriguez | CA |
| 121 | Jackiane Moseley | CA |
| 122 | Jaime Comer | CA |
| 123 | James Gates | CA |
| 124 | Jema Isais | CA |
| 125 | Jemma Lawler | CA |
| 126 | Jennifer Brown | CA |
| 127 | Jennifer Huggins | CA |
| 128 | Jeremy Perez | CA |
| 129 | Jessica Murga | CA |
| 130 | Jonetta James | CA |
| 131 | Joshua Maddux | CA |
| 132 | Katelyn Nelson | CA |
| 133 | Katelyn Odonnell | CA |
| 134 | Katherine Valenzuela | CA |
| 135 | Kattia Alvarez | CA |
| 136 | Kenyera Moya | CA |
| 137 | Kevin Martínez | CA |
| 138 | Kimberly Ellis | CA |
| 139 | Kristine Hemady | CA |
| 140 | Lakema Tate | CA |
| 141 | Laquita Strong | CA |
| 142 | Larry Jones | CA |
| 143 | Larry McCafferty | CA |
| 144 | Lashonda Gibbs | CA |
| 145 | Leigha Herrera | CA |
| 146 | Linda Flores | CA |
| 147 | Lyndsey Rower | CA |
| 148 | Madison Vierstra | CA |
| 149 | Malinda Childers | CA |
| 150 | Marcus Lomeli | CA |
| 151 | Mario Halim | CA |
| 152 | Mario Montoya | CA |
| 153 | Mark Baty | CA |
| 154 | Marlene Corgile | CA |
| 155 | Martin Abril | CA |

| 156 | Matthew Lee | CA |
|---|---|---|
| 157 | Mechelle Goshen | CA |
| 158 | Megan Parks | CA |
| 159 | Meghan Figueiredo | CA |
| 160 | Melinda Paxton | CA |
| 161 | Melissa Quintana | CA |
| 162 | Michael Daniel | CA |
| 163 | Michael Jameson | CA |
| 164 | Michelle Voos | CA |
| 165 | Nathan Lance Irwin | CA |
| 166 | Nicholas DeBrito | CA |
| 167 | Nick Mizokami | CA |
| 168 | Nicole Leyde | CA |
| 169 | Noah Snyder | CA |
| 170 | Nora Vongkeo | CA |
| 171 | Nyla Myles | CA |
| 172 | Ofelia Villalobos Gomez | CA |
| 173 | Olivia Tober | CA |
| 174 | Omar Marquez | CA |
| 175 | Parker Christian | CA |
| 176 | Patricia Alvarado | CA |
| 177 | Peggy Rand | CA |
| 178 | Phil Smith | CA |
| 179 | Rachel Ferreira | CA |
| 180 | Regina Campbell | CA |
| 181 | Rene Arias | CA |
| 182 | Renee Simms | CA |
| 183 | Robby Cvejanovich | CA |
| 184 | Robert Dabbs | CA |
| 185 | Rosario Amezcua | CA |
| 186 | Rosemary Concepcion | CA |
| 187 | Ryan Lynch | CA |
| 188 | Sallie Castaneda | CA |
| 189 | Sepideh Sohrabnejad | CA |
| 190 | Sergio Romero | CA |
| 191 | Seth Keul | CA |
| 192 | Shabana Haq | CA |
| 193 | Shar Daniels | CA |
| 194 | Shayla Simmons | CA |
| 195 | Sherbaz Khalid | CA |
| 196 | Sherrie Neal | CA |
| 197 | Socorro Olmos | CA |
| 198 | Song Yang | CA |
| 199 | Stefanie Villalobos | CA |

| 200 | Stephanie Roberts | CA |
|---|---|---|
| 201 | Stephanie Tavares | CA |
| 202 | Stephen Guzman | CA |
| 203 | Stuart Rogoff | CA |
| 204 | Sulema Gutierrez | CA |
| 205 | Susan Brabant | CA |
| 206 | Talia Reyes | CA |
| 207 | Tamara Carter | CA |
| 208 | Tamara Wright | CA |
| 209 | Timothy Althouse | CA |
| 210 | Tsheba Shareef | CA |
| 211 | Twyla Roth | CA |
| 212 | Victoria Horkheimer | CA |
| 213 | Wendy Neal | CA |
| 214 | Whitney Bowman | CA |
| 215 | Wilson Catalan | CA |
| 216 | Wing-yi Lin | CA |
| 217 | Yeolanda Marcoff | CA |
| 218 | Ynez Benitez | CA |
| 219 | Angenette Lewis | CO |
| 220 | Brandi Jones | CO |
| 221 | Elizabeth Allison-Schwartz | CO |
| 222 | Golda Harris | CO |
| 223 | Holly Emmons | CO |
| 224 | Jazmine Ramirez | CO |
| 225 | Kathleen Carlson | CO |
| 226 | Lancelot Calderon | CO |
| 227 | Matt Nadeau | CO |
| 228 | Tammi Shelton | CO |
| 229 | Tuesday Rosales | CO |
| 230 | Christena Temple | CT |
| 231 | Deborah Karakurt | CT |
| 232 | Joseph Calash | CT |
| 233 | Lisa Romaniw | CT |
| 234 | Nicholas Volpe | CT |
| 235 | Adam Hersh | DC |
| 236 | Beth Larussa | DE |
| 237 | Carla Wright | DE |
| 238 | Michele Hall | DE |
| 239 | Patrick Macbride | DE |
| 240 | Shakerah White | DE |
| 241 | Alison Griffith | FL |
| 242 | Ann Barrett | FL |
| 243 | Antony Roman Santiago | FL |

| 244 | Becky Wyatt | FL |
|---|---|---|
| 245 | Betty Boccia | FL |
| 246 | Bonita Schafer | FL |
| 247 | Carmen Chambers | FL |
| 248 | Carol Mcintyre | FL |
| 249 | Colleen Evola | FL |
| 250 | Coreen Sutphin | FL |
| 251 | Crystal Gravitt | FL |
| 252 | David Catino | FL |
| 253 | Dawn Hyre | FL |
| 254 | Denise Jandik | FL |
| 255 | Eboni Wright | FL |
| 256 | Eddie Barnes | FL |
| 257 | Ellen Berman | FL |
| 258 | Guy Bradshaw | FL |
| 259 | Jarrett Wise | FL |
| 260 | Jill Perseghin | FL |
| 261 | Joan Marchiano | FL |
| 262 | John Hernandez | FL |
| 263 | Jordan Selensky | FL |
| 264 | Jose Caro | FL |
| 265 | Julie Anderson | FL |
| 266 | Jultavious Osborne | FL |
| 267 | Kacia Flournoy | FL |
| 268 | Karyn Luff | FL |
| 269 | Keith Johnson | FL |
| 270 | Laura Hird | FL |
| 271 | Lisandra Reyes | FL |
| 272 | Maria Chibe | FL |
| 273 | Mark Rivkind | FL |
| 274 | Michelle Jenkins | FL |
| 275 | Nathanial Waters | FL |
| 276 | Paul Cassie | FL |
| 277 | Paula Stanson | FL |
| 278 | Petrina Louis | FL |
| 279 | Regina Autrey | FL |
| 280 | Robert Kehr | FL |
| 281 | Robin Reitenour | FL |
| 282 | Sarah Bube | FL |
| 283 | Sonya Ray | FL |
| 284 | Stephanie Vermillion | FL |
| 285 | Suprina Byrd | FL |
| 286 | Susan Durkin | FL |
| 287 | Tammy Mikell | FL |

| 288 | Tammy Sullivan | FL |
|---|---|---|
| 289 | Tina Cummings | FL |
| 290 | Tina Owens | FL |
| 291 | Arabia Daniels | GA |
| 292 | Bernard Washington | GA |
| 293 | Bert Jardy | GA |
| 294 | Carrie Hall | GA |
| 295 | Danny Rowe | GA |
| 296 | Felicia Sanders | GA |
| 297 | Howard Harden | GA |
| 298 | Jennifer Haiduk | GA |
| 299 | Jill Earnest | GA |
| 300 | Lakesha Hillsman | GA |
| 301 | Lecia Miller | GA |
| 302 | Lezli Anglin | GA |
| 303 | Nichelle Taylor | GA |
| 304 | Nicole Mirallegro | GA |
| 305 | Pamela Bond | GA |
| 306 | Peter Le | GA |
| 307 | Rhonda Redmon | GA |
| 308 | Sheila Joshua | GA |
| 309 | Shera Tyner | GA |
| 310 | Tabitha Lynch | GA |
| 311 | Tami Shanahan | GA |
| 312 | Thersa Ealey-Hutchins | GA |
| 313 | Warrick Finnie | GA |
| 314 | William Roberts | GA |
| 315 | Reneldo Rodriguez | HI |
| 316 | Cheryl Greiner | IA |
| 317 | Jami Erickson | IA |
| 318 | Jennifer Ellis | IA |
| 319 | Jennifer Wolterman | IA |
| 320 | Linda Barnhardt | IA |
| 321 | Mitchell Schaub | IA |
| 322 | Rex Todd | IA |
| 323 | William Zimmerman | IA |
| 324 | Jennifer Pittser | ID |
| 325 | Shane Schaeffer | ID |
| 326 | Aimee Pickett | IL |
| 327 | Alicia Ross | IL |
| 328 | Allen Payne | IL |
| 329 | Alvin Carter | IL |
| 330 | Amy Bearden | IL |
| 331 | Amy Henderson | IL |

| | | | | | | |
|---|---|---|---|---|---|---|
| 332 | Andrew Foster | IL | | 376 | Donna Golden | IL |
| 333 | Annette Miller | IL | | 377 | Elena Do | IL |
| 334 | Anthony Ramsey | IL | | 378 | Elizabeth Slagle | IL |
| 335 | Anthony Vincent | IL | | 379 | Ellie Rassin | IL |
| 336 | April Johnson | IL | | 380 | Eric Howard | IL |
| 337 | Ashley Jackson | IL | | 381 | Felonee Schrage | IL |
| 338 | Ashley Romine | IL | | 382 | Frank Long | IL |
| 339 | Ashley Weeks | IL | | 383 | Gadeer Hammad | IL |
| 340 | Ayse Nur Dil Barutcu | IL | | 384 | Garnet Tucker | IL |
| 341 | Bambi Kistler | IL | | 385 | Gloria Brominski | IL |
| 342 | Barbara Moss | IL | | 386 | Grace Oczon | IL |
| 343 | Betty Reed | IL | | 387 | Heather Ligue | IL |
| 344 | Billie Dukes | IL | | 388 | Heather Ruhl | IL |
| 345 | Bria Berger | IL | | 389 | Hector Herrera | IL |
| 346 | Brian Sanders | IL | | 390 | Honey Dubes | IL |
| 347 | Carla Rogers | IL | | 391 | Howard Bowie | IL |
| 348 | Carline Altine | IL | | 392 | Inez Beauchsmp | IL |
| 349 | Carmen Burgos | IL | | 393 | Iona Wilson | IL |
| 350 | Carmen Schexnider | IL | | 394 | Irvin Strait | IL |
| 351 | Carrie Fishel | IL | | 395 | Jaime Zavala | IL |
| 352 | Carrie Richmond | IL | | 396 | James Humpf Jr. | IL |
| 353 | Chantel Becker | IL | | 397 | Jamie Unholz | IL |
| 354 | Charles Brooks | IL | | 398 | Jayson Davis | IL |
| 355 | Charles Unfricht | IL | | 399 | Jeff Perry | IL |
| 356 | Che Wallace | IL | | 400 | Jennifer Mahoney | IL |
| 357 | Connie Scott | IL | | 401 | Jennifer Rowan | IL |
| 358 | Cynthia Courtney | IL | | 402 | Jennifer Snow | IL |
| 359 | Danaria Randolph | IL | | 403 | Jessica Myslinski | IL |
| 360 | Daniel Sparks | IL | | 404 | Jinan Noah | IL |
| 361 | David Avery | IL | | 405 | Joaquin Roque | IL |
| 362 | David Chavez | IL | | 406 | Jody Todd | IL |
| 363 | David Freifeld | IL | | 407 | John Baumgarten | IL |
| 364 | David Lark | IL | | 408 | Joseph Dzeima | IL |
| 365 | Dawn Bromeland | IL | | 409 | Joyce Newton | IL |
| 366 | Dawn Rodgers | IL | | 410 | Juan Lozano | IL |
| 367 | Debbie Robinson | IL | | 411 | Kathleen Crowell | IL |
| 368 | Debora Murphy | IL | | 412 | Katie Thatcher | IL |
| 369 | Deetta Shanks | IL | | 413 | Kelly Rymer | IL |
| 370 | Demetrious Moore | IL | | 414 | Kimberly Sparks | IL |
| 371 | Denise Melton | IL | | 415 | Kizzy Freeman | IL |
| 372 | Denise Russell | IL | | 416 | Kristen Budnicki | IL |
| 373 | Derrick Elbus | IL | | 417 | Kristina Ganssley | IL |
| 374 | Dianner Spells | IL | | 418 | Latrese Kennedy | IL |
| 375 | Donald Tanksley | IL | | 419 | Levi Parker | IL |

| 420 | Linda Rodgers | IL |
|---|---|---|
| 421 | Linda Tranchant | IL |
| 422 | Linzy Courson | IL |
| 423 | Lisa Debaere | IL |
| 424 | Lisa Riley | IL |
| 425 | Madeline Soerens | IL |
| 426 | Malik Sylvester | IL |
| 427 | Marcus Spencer | IL |
| 428 | Margaret Smith | IL |
| 429 | Mariea Harvey | IL |
| 430 | Marylee Gasaway | IL |
| 431 | Megan Hoeppner | IL |
| 432 | Melissa Berardi | IL |
| 433 | Melissa Naleway | IL |
| 434 | Michael Durbin | IL |
| 435 | Michael Turner | IL |
| 436 | Michael Villarreal | IL |
| 437 | Michelle Stovall | IL |
| 438 | Monica Baezs | IL |
| 439 | Muhammad Ehsan | IL |
| 440 | Nancy Watkins | IL |
| 441 | Nick Sellers | IL |
| 442 | Nicky Tucker | IL |
| 443 | Niya Young | IL |
| 444 | Octavia Bradley | IL |
| 445 | Patricia Lenckus | IL |
| 446 | Regeana Brister | IL |
| 447 | Renee Granata | IL |
| 448 | Rhonda Alexander | IL |
| 449 | Rosemary Palmer | IL |
| 450 | Rubie Lawson | IL |
| 451 | Salina Gonzalez | IL |
| 452 | Samantha Balchunas | IL |
| 453 | Sanela Alijagic | IL |
| 454 | Sara Evanusich | IL |
| 455 | Scott Jones | IL |
| 456 | Seneca James | IL |
| 457 | Shadea Maguire | IL |
| 458 | Shalimar Acosta-Aguayo | IL |
| 459 | Shaneika Williams | IL |
| 460 | Shannon Schultheis | IL |
| 461 | Shawn Foote | IL |
| 462 | Shelby Weller | IL |
| 463 | Sherrie Devening | IL |

| 464 | Stephanie Mcgee | IL |
|---|---|---|
| 465 | Tamicya Waddell | IL |
| 466 | Tasha Buckley | IL |
| 467 | Tasha Callahan | IL |
| 468 | Terry Clay | IL |
| 469 | Terry Jones | IL |
| 470 | Thamara Estrada | IL |
| 471 | Tiffany Reese | IL |
| 472 | Tina Wright | IL |
| 473 | Tony Baker | IL |
| 474 | Trent Gunderson | IL |
| 475 | Trystin Moy | IL |
| 476 | Twila Powell | IL |
| 477 | Ulysses Ramirez | IL |
| 478 | Valerie Parker | IL |
| 479 | Veronica Williams | IL |
| 480 | Vicky Lipsky | IL |
| 481 | Victoria Boscacci | IL |
| 482 | Wendi Fleming | IL |
| 483 | William Boards | IL |
| 484 | William Little | IL |
| 485 | Williemae Nance | IL |
| 486 | Yashica Grandberry | IL |
| 487 | Anita Langford | IN |
| 488 | Brad Tackett | IN |
| 489 | Cindy Bragdon | IN |
| 490 | Cindy Call | IN |
| 491 | Corey Green | IN |
| 492 | Daryl Bierma | IN |
| 493 | Donna Carter | IN |
| 494 | Elizabeth Velazquez | IN |
| 495 | Jessica Milligan | IN |
| 496 | Joanne Lynch | IN |
| 497 | Joshua Ppool | IN |
| 498 | Linda Cline | IN |
| 499 | Melissa Bruce | IN |
| 500 | Michelle Toseski | IN |
| 501 | Patrice Bryant | IN |
| 502 | Robert Holtsclaw | IN |
| 503 | Ronald Stevenson | IN |
| 504 | Samantha Terry | IN |
| 505 | Sandratte Williams | IN |
| 506 | Sandy Loften | IN |
| 507 | Stephen McIntyre | IN |

| 508 | Susan Monroe | IN |
|---|---|---|
| 509 | Thomas Palmer | IN |
| 510 | Tim Dean | IN |
| 511 | Verna Tunis | IN |
| 512 | Virginia Stacy | IN |
| 513 | Zander Lawton | IN |
| 514 | Andrew Peterson | KS |
| 515 | Dawn Pervin | KS |
| 516 | James Russell | KS |
| 517 | Larry Hall | KS |
| 518 | Melanie Manry | KS |
| 519 | William Yates | KS |
| 520 | Allan Goldie | KY |
| 521 | Brandon Kosbiel | KY |
| 522 | Chris Miller | KY |
| 523 | Clarissa Dalton | KY |
| 524 | Craig Wilson | KY |
| 525 | De'asia Beard | KY |
| 526 | Heather Hurt | KY |
| 527 | James Parks | KY |
| 528 | Jason Phillips | KY |
| 529 | Lois Williamson-Moon | KY |
| 530 | Rachelle Smith | KY |
| 531 | Rena Hall | KY |
| 532 | Rhonda Haddix | KY |
| 533 | Richard Zilch | KY |
| 534 | Rickey Johnson | KY |
| 535 | Robin Walls | KY |
| 536 | Sara Brooks | KY |
| 537 | Sarah Demott | KY |
| 538 | Sharon Page | KY |
| 539 | Starlene Allen | KY |
| 540 | Todd Coppage | KY |
| 541 | William Meeks | KY |
| 542 | Andra Chaney | LA |
| 543 | Charles L. Kershaw II | LA |
| 544 | Jeffrey Smith | LA |
| 545 | Latisha Johnson | LA |
| 546 | Lenicia Ridley | LA |
| 547 | Melody Santiago | LA |
| 548 | Stephanie Carloss | LA |
| 549 | Toby Buchan | LA |
| 550 | Travis Spikes | LA |
| 551 | Vanessa Castro | LA |

| 552 | Ashley Tracy | MA |
|---|---|---|
| 553 | Erica Aponte | MA |
| 554 | Gillian Gardner De Arede | MA |
| 555 | Jason Wong | MA |
| 556 | Jeanne Gallagher | MA |
| 557 | Louanne Sosnicki | MA |
| 558 | Michael Methe Parron | MA |
| 559 | Akeyiah Bullock | MD |
| 560 | Annika Taylor | MD |
| 561 | Elroy Randall | MD |
| 562 | Karren Mazyck | MD |
| 563 | Linda Beeman | MD |
| 564 | Twanda Joyner | MD |
| 565 | Britney Noble | ME |
| 566 | Mark Rondyke | ME |
| 567 | Melvin Russell | ME |
| 568 | Michelle Whitmore | ME |
| 569 | Angela Thurlow | MI |
| 570 | Angelique Guyaux | MI |
| 571 | Ashley Eisenhardt | MI |
| 572 | Bobby Hoye | MI |
| 573 | Catherine Krager | MI |
| 574 | Crystal Hubbard | MI |
| 575 | David Lindsay | MI |
| 576 | Dawn Tyra | MI |
| 577 | James Smith | MI |
| 578 | Jeanna Foster | MI |
| 579 | Joe Duzy | MI |
| 580 | Loalice Jackson | MI |
| 581 | Marcey Tejeda | MI |
| 582 | Marquita Schillicutt | MI |
| 583 | Phillip Timms | MI |
| 584 | Shannon Thompson | MI |
| 585 | Sharon Rhodes | MI |
| 586 | Shawn Ewing | MI |
| 587 | Shellie Battleshaw | MI |
| 588 | Sheryl Moore | MI |
| 589 | Tanisha Powell Ford | MI |
| 590 | Terri Proben | MI |
| 591 | Vanessa Buyea | MI |
| 592 | Angel Jacobson | MN |
| 593 | Deborah Hampton | MN |
| 594 | John Mosser | MN |
| 595 | Latanya Garner | MN |

| 596 | Luann Berg | MN |
|---|---|---|
| 597 | Stacia Miller | MN |
| 598 | Tajiddin Mason | MN |
| 599 | Takia McBride | MN |
| 600 | Trevor Parson | MN |
| 601 | Amanda Kremer | MO |
| 602 | Anthony Boysen | MO |
| 603 | Brenton Smith | MO |
| 604 | Casey Clark | MO |
| 605 | Cody Hurt | MO |
| 606 | Dana Dold-Brown | MO |
| 607 | Dennis Baker | MO |
| 608 | Jeannie Strickler | MO |
| 609 | Linda Brandt | MO |
| 610 | Lorie Despres | MO |
| 611 | Patricia Shelby | MO |
| 612 | Paula Massey | MO |
| 613 | Richard Green | MO |
| 614 | Sasha Walters | MO |
| 615 | Shatonya Thompson | MO |
| 616 | Shawn Gropper | MO |
| 617 | Sherry Thomas | MO |
| 618 | Sheryl Couch | MO |
| 619 | Tameka Mason | MO |
| 620 | Tami Moralez | MO |
| 621 | April Yarbrough | MS |
| 622 | Bettye Keys | MS |
| 623 | Carolyn Clark | MS |
| 624 | Corey Davis | MS |
| 625 | Felicia Spencer | MS |
| 626 | Glanicea Ickom | MS |
| 627 | Gwendolyn Hawthorne | MS |
| 628 | John Kuchar | MS |
| 629 | Judy Lawn | MS |
| 630 | Kevin Lovelace | MS |
| 631 | Lora Shields | MS |
| 632 | Mark Rollins | MS |
| 633 | Mary Meldren | MS |
| 634 | Mary Perry | MS |
| 635 | Melinda Sparks | MS |
| 636 | Mona Carter | MS |
| 637 | Ollie Bass | MS |
| 638 | Spencer Magee | MS |
| 639 | Lawrence Kimble | MT |

| 640 | Amber Webb | NC |
|---|---|---|
| 641 | Annie Nicholson | NC |
| 642 | Charles Connor | NC |
| 643 | Charles McClain | NC |
| 644 | Crystal Jackson | NC |
| 645 | Cynthia Owens | NC |
| 646 | Cynthia Terry | NC |
| 647 | Gabrielle Harden | NC |
| 648 | Jack Baker | NC |
| 649 | Jennifer Spencer | NC |
| 650 | Jessica Papageorge | NC |
| 651 | Jimmie Taylor | NC |
| 652 | Joaquin Menendez | NC |
| 653 | Joe Hardy | NC |
| 654 | Jonathan Parker | NC |
| 655 | Jose Garcia | NC |
| 656 | Kimberly Foster | NC |
| 657 | Laila Dames | NC |
| 658 | Lashekia Grimes | NC |
| 659 | Lisa Glenn Cash | NC |
| 660 | Luis Delgado | NC |
| 661 | Olivia Petty | NC |
| 662 | Rodney Duncan | NC |
| 663 | Shawn Herring | NC |
| 664 | Susan Owen Brooks | NC |
| 665 | Terry Peralta | NC |
| 666 | Tina Huntebrinker | NC |
| 667 | Virginia Hall | NC |
| 668 | Yvette Williams | NC |
| 669 | Ann Partridge | ND |
| 670 | Chico Barnard | NE |
| 671 | Josh Hume | NE |
| 672 | Roberta Ahrens | NE |
| 673 | Linds Perkins | NH |
| 674 | Lisa Kleiner | NH |
| 675 | Camila Galarza | NJ |
| 676 | Cheyenne Fletcher | NJ |
| 677 | Cosimo Granata | NJ |
| 678 | Daniel Varady | NJ |
| 679 | Deborah Vilawys | NJ |
| 680 | Donna Buono | NJ |
| 681 | Erin Fox | NJ |
| 682 | Gail Dopp | NJ |
| 683 | Lauren Simmons | NJ |

| | | |
|---|---|---|
| 684 | Rita Ferrari | NJ |
| 685 | Sami Taweel | NJ |
| 686 | Barbara Gallegos | NM |
| 687 | Cruz Soria | NM |
| 688 | David Gill | NM |
| 689 | Debbie Smith | NM |
| 690 | Michael Sheek | NM |
| 691 | Paul Albert | NM |
| 692 | Samantha Santana | NM |
| 693 | Teddy Everidge | NM |
| 694 | Carla Pfeifer | NV |
| 695 | Claude Fratto | NV |
| 696 | Faye Towner | NV |
| 697 | Joann Jones | NV |
| 698 | Kenneth Nicholas | NV |
| 699 | Maritsa Amador | NV |
| 700 | Micheline Gould | NV |
| 701 | Suzanne Hackett | NV |
| 702 | Charles Horsky | NY |
| 703 | Charlotte Lau | NY |
| 704 | Chi Vo | NY |
| 705 | Christina Lowery | NY |
| 706 | Cindy Rego | NY |
| 707 | Colleen McKibbin | NY |
| 708 | Darjay Lowndes | NY |
| 709 | David Calhoun | NY |
| 710 | Edward Taylor | NY |
| 711 | Fotini Tsirkas | NY |
| 712 | Francisco Diaz | NY |
| 713 | Frank Garcia | NY |
| 714 | Jeannette Gage | NY |
| 715 | Jeffrey Day | NY |
| 716 | Jia Hao Weng | NY |
| 717 | Jon Kessel | NY |
| 718 | Jonathan Daly | NY |
| 719 | Joseph Post | NY |
| 720 | Joseph Sfakiotakis | NY |
| 721 | Judy Knarich | NY |
| 722 | Julie Newcombe | NY |
| 723 | Karen Getchell | NY |
| 724 | Kelvin Rodriguez | NY |
| 725 | Louisa Olcott | NY |
| 726 | Luigina Rosario | NY |
| 727 | Mike Valentino jr | NY |

| | | |
|---|---|---|
| 728 | Moussa Kouyate | NY |
| 729 | Patti Donadio | NY |
| 730 | Richard Byas | NY |
| 731 | Richard Ficeto | NY |
| 732 | Rob McCalla | NY |
| 733 | Robert Forman | NY |
| 734 | Tamara Mercado | NY |
| 735 | Tanya Lando | NY |
| 736 | Thomas Morris | NY |
| 737 | Thomas Stewart | NY |
| 738 | Veronica Rosario | NY |
| 739 | Vida Thomas | NY |
| 740 | Vincent Savarese | NY |
| 741 | Yesenia Gonzalez | NY |
| 742 | Alberta Horne | OH |
| 743 | Amanda Schoolcraft | OH |
| 744 | Ashley Holz | OH |
| 745 | Ashley Logan | OH |
| 746 | Benjamin Smith | OH |
| 747 | Carmen Foster | OH |
| 748 | Cathy Walchalk | OH |
| 749 | Chris Bodinet | OH |
| 750 | Dayna Nelson | OH |
| 751 | Donna Kurtz | OH |
| 752 | Donricko Greene | OH |
| 753 | Jennile Ernest | OH |
| 754 | Joanne Henderson | OH |
| 755 | Jorge Arriola | OH |
| 756 | Kelly Prichard | OH |
| 757 | Kim Gutierrez | OH |
| 758 | Kimberly Ward | OH |
| 759 | Laura Knapik | OH |
| 760 | Mark Brown | OH |
| 761 | Nancy Wiggenhorn | OH |
| 762 | Olesya Timam | OH |
| 763 | Pamela Podolsky | OH |
| 764 | Reta Wantland | OH |
| 765 | Ricky Turney Jr. | OH |
| 766 | Robyn Stolicny | OH |
| 767 | Sally Dalton | OH |
| 768 | Sheena Patel | OH |
| 769 | Timmie Wells | OH |
| 770 | Zan Smith | OH |
| 771 | Diana Bowen | OK |

| 772 | Holli Chilton | OK |
|-----|---------------|-----|
| 773 | Jesus Torralba | OK |
| 774 | Karen Thomas | OK |
| 775 | Laura Jablonski | OK |
| 776 | Loretta Chandler | OK |
| 777 | Margaret Stclair | OK |
| 778 | Megan Kirk | OK |
| 779 | Melenee Blalock | OK |
| 780 | Shawn Ray | OK |
| 781 | Thomas Schafer | OK |
| 782 | Alicia Coakley | OR |
| 783 | Barbara Bautista lazo | OR |
| 784 | Deborah Shelton | OR |
| 785 | Elizabeth Darke | OR |
| 786 | Felicia Palmer | OR |
| 787 | Jared Alexander | OR |
| 788 | Joe Balestreri | OR |
| 789 | John Boytz | OR |
| 790 | Kayleen Quiros | OR |
| 791 | Leah Geslois | OR |
| 792 | Maryanne Skinner | OR |
| 793 | Mcrae Naayers | OR |
| 794 | Narjes Deris | OR |
| 795 | Sherry Deike | OR |
| 796 | Stewart Buchanan | OR |
| 797 | Tanya Baley | OR |
| 798 | Wendy Swales | OR |
| 799 | Angela Snyder | PA |
| 800 | Anthony Gomez | PA |
| 801 | Carol Ciocco | PA |
| 802 | Chad Smith | PA |
| 803 | Crystal Dooley | PA |
| 804 | David O'Connor | PA |
| 805 | David Roesler | PA |
| 806 | Deneen Stevenson | PA |
| 807 | Denise Lapinski | PA |
| 808 | Eric Loring | PA |
| 809 | Erika Burris | PA |
| 810 | Gerard Doyle | PA |
| 811 | Gianni Mitchell | PA |
| 812 | Heather Uhl | PA |
| 813 | Helen Moore | PA |
| 814 | Jim Bair | PA |
| 815 | Jim Mallin | PA |

| 816 | Jody Blough | PA |
|-----|-------------|-----|
| 817 | Joe Michaels | PA |
| 818 | Jonathan Beaver | PA |
| 819 | Juwanna Scott | PA |
| 820 | Kimberly Thurman | PA |
| 821 | Lee Williams | PA |
| 822 | Lisa Merker | PA |
| 823 | Lisa Watt | PA |
| 824 | Melissa Eshleman | PA |
| 825 | Nicholas Smeal | PA |
| 826 | Pamela Davies | PA |
| 827 | Renee Poutrain | PA |
| 828 | Robert McClain | PA |
| 829 | Rosa Jackson | PA |
| 830 | Samantha Stolarik | PA |
| 831 | Sherrie Stough | PA |
| 832 | Steven Thornsberry | PA |
| 833 | Susan Shiner | PA |
| 834 | Tanya Palmer | PA |
| 835 | Victoria Phillips | PA |
| 836 | Walter Ember | PA |
| 837 | Xeniya Vorobyeva | PA |
| 838 | Colleen Appolonia | RI |
| 839 | Howard Pastran | RI |
| 840 | Kimberly Black | RI |
| 841 | Lori Teper | RI |
| 842 | Ryan Dimon | RI |
| 843 | Barbara Cooper | SC |
| 844 | Deborah Watts | SC |
| 845 | Deborah Woodberry | SC |
| 846 | Ginger Talford | SC |
| 847 | Michael Short | SC |
| 848 | Pamela Smith | SC |
| 849 | Stacey Griffin | SC |
| 850 | Tammy Dellinger | SC |
| 851 | Jeremy West | SD |
| 852 | Michelle Heil | SD |
| 853 | Stephanie Drapeau | SD |
| 854 | Benny Joles | TN |
| 855 | Christopher Anderson | TN |
| 856 | Christy Russell | TN |
| 857 | Darron Orange | TN |
| 858 | Denise Tatom | TN |
| 859 | Donald Hillaker | TN |

| 860 | Gertrude Robinson | TN |
|-----|-------------------|----|
| 861 | Heather Bartol | TN |
| 862 | Jason Prietz | TN |
| 863 | Jeffery Cates | TN |
| 864 | Joyce Williams | TN |
| 865 | Patricia McKnight | TN |
| 866 | Philip De Luca | TN |
| 867 | Samatha Ogle | TN |
| 868 | Sean Hoskin | TN |
| 869 | Stephanie Taylor | TN |
| 870 | Tara Quillen | TN |
| 871 | Timothy Johnson | TN |
| 872 | Wayne Brister | TN |
| 873 | Wayne Dilks | TN |
| 874 | Zachary Cheek | TN |
| 875 | Aliree Bush | TX |
| 876 | Amanda Caster | TX |
| 877 | Amanda Luman | TX |
| 878 | Ariana Stewart | TX |
| 879 | Asad Kapadia | TX |
| 880 | Aundrill Henderson | TX |
| 881 | Beverly Garner | TX |
| 882 | Brittany Stoker | TX |
| 883 | Brittney Cantu | TX |
| 884 | Carlton Williams | TX |
| 885 | Catheryn Rodriguez | TX |
| 886 | Christine Whitney | TX |
| 887 | Christopher Simmons | TX |
| 888 | Consetta Marks | TX |
| 889 | Danielle Williams | TX |
| 890 | Dianna Tinsdale | TX |
| 891 | Gabriel Vater | TX |
| 892 | Garrett Dailey | TX |
| 893 | Holley Johnson | TX |
| 894 | Jason White | TX |
| 895 | Joe Vega | TX |
| 896 | Katrina Gaer | TX |
| 897 | Lisa Rose | TX |
| 898 | Lynette Clay | TX |
| 899 | Malissa Scott | TX |
| 900 | Marcela Alanis | TX |
| 901 | Maricela Camacho | TX |
| 902 | Mishal Fatima | TX |
| 903 | Nadeeka Kariyawasam | TX |

| 904 | Norma Gallegos | TX |
|-----|----------------|----|
| 905 | Pam Jones | TX |
| 906 | Patty Casey | TX |
| 907 | Ricardo Jaquez | TX |
| 908 | Rick Dewoody | TX |
| 909 | Robert Levi | TX |
| 910 | Robert Yancy | TX |
| 911 | Rose Irigoyen | TX |
| 912 | Ruth Leal | TX |
| 913 | Sally Morin | TX |
| 914 | Sandra Terrazas | TX |
| 915 | Tammie Rutledge | TX |
| 916 | Tammy Stallcup | TX |
| 917 | Thomas Lacy | TX |
| 918 | Virginia Vann | TX |
| 919 | Willie Garner | TX |
| 920 | Ethan Baker | UT |
| 921 | Jennie Probert | UT |
| 922 | Kurtis Olson | UT |
| 923 | Robert Lee | UT |
| 924 | Stephen Hender | UT |
| 925 | Abi Conner | VA |
| 926 | Anna Harshman | VA |
| 927 | Bertha Shands | VA |
| 928 | Claudia Hammeren | VA |
| 929 | Debbie Crider | VA |
| 930 | Jamie Adler | VA |
| 931 | Kimberly Smith | VA |
| 932 | Paula Cuellar | VA |
| 933 | Sean Evans | VA |
| 934 | Wayne Parr | VA |
| 935 | Andrea Clark | WA |
| 936 | April Becker | WA |
| 937 | Cortney Rogers | WA |
| 938 | Elizabeth Boyd | WA |
| 939 | Jeff Staha | WA |
| 940 | Jennifer Davis | WA |
| 941 | Jodi Meadows | WA |
| 942 | John Laughrey | WA |
| 943 | Lydia De Jorge | WA |
| 944 | Mariah McGill | WA |
| 945 | Mark Johnston | WA |
| 946 | Penny Montgomery | WA |
| 947 | Robert Hutton | WA |

| 948 | Rusty Groce | WA |
|-----|-------------|-----|
| 949 | Seana Boyd | WA |
| 950 | Tracy Moreau | WA |
| 951 | Annie White | WI |
| 952 | Barbara Johnson | WI |
| 953 | Carrie Fox | WI |
| 954 | Cornish Whitfield | WI |
| 955 | David Blixt | WI |
| 956 | Denina Cottrell | WI |
| 957 | Juanita Ortega | WI |
| 958 | Mattieanna Sechser | WI |
| 959 | Mia Jefferson | WI |
| 960 | Nancy Kovacs | WI |
| 961 | Raven Hampton | WI |
| 962 | Shauntaya Wiley | WI |
| 963 | Theresa Zimmerman | WI |
| 964 | Troy Winkelman | WI |
| 965 | William Johnston | WI |
| 966 | Amber Ratliff | WV |
| 967 | Brian Hayes | WV |
| 968 | Brittany Morlan | WV |
| 969 | Clayton Cary | WV |
| 970 | Darla Terry Mullins | WV |
| 971 | Ena Myers | WV |
| 972 | Sarah Reed | WV |
| 973 | Shawnell Berry | WV |
| 974 | Shelia Jones | WV |